2011 ME 119

**In the Matter of Lyman L. HOLMES.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Nov. 8, 2011.

Decided: Dec. 1, 2011.

James M. Bowie, Esq., Thompson & Bowie, LLP, Portland, for Lyman L. Holmes.

H. Cabanne Howard, Esq., Portland, for the Committee on Judicial Responsibility and Disability.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

PER CURIAM.

[¶ 1] On May 20, 2011, the Supreme Judicial Court received a report from the Committee on Judicial Responsibility and Disability recommending that Probate Judge Lyman L. Holmes be sanctioned for certain violations of Canon 3(B)(8) of the Maine Code of Judicial Conduct, which requires that judges "dispose of all judicial matters promptly."

[¶ 2] On June 2, 2011, the Chief Justice assigned Associate Justice Jon D. Levy to establish a process for receiving any additional input from the Committee and Judge Holmes, and to make recommendations for further action by the Court. Justice Levy conferred with the parties, held a hearing, and filed a report and recommendations with the Court on October 4,

2011. The Court then invited any final comments or written argument from the parties, both of whom declined further input. The full Court has now conferred regarding the pending recommendations and enters the following findings and disposition.

## I. VIOLATION OF CANON 3(B)(8)

▉ [¶ 3] Regarding the allegations of violations, the facts are uncontested. Judge Holmes has candidly conceded a pattern of unacceptable delays in managing and resolving at least five cases entrusted to him. The most egregious of those violations involved a delay of nearly five years in the resolution of a matter involving family contact with a child. In several cases, parties waited over fourteen and sixteen months for judicial decisions in matters that could and should have been resolved much more expeditiously. The Court concludes that the pattern of delays constitutes a violation of Canon 3(B)(8).

## II. BACKGROUND FOR CONSIDERATION OF SANCTIONS

▉ [¶ 4] In determining the appropriate sanctions, we examine multiple factors, including the judge's professional history, the context within which the violations occurred, the harm to the litigants and public, the seriousness of the violations, the judge's acknowledgement of the violations and understanding of the impact on the litigants, and the prospects for ensuring public trust and confidence in the judge's work in the future. *See* M.Code Jud. Conduct Preamble; *see also In re Nadeau*, 2007 ME 35, ¶¶ 2–6, 916 A.2d 200. We accept and adopt Justice Levy's recommended findings regarding those factors in this case:

Judge Holmes has been the Judge of Probate for Washington County since 1989. He also hears cases from Aroostook, Hancock, and Penobscot counties when those counties' probate judges are recused. During his twenty-two years of service, he has not been previously subject to discipline by the Committee for a violation of the Code of Judicial Conduct. His delay in resolving the cases that are the subject of the current petition largely stems from his failure to maintain a system for managing his cases under advisement, other than his reliance on memory. The delay was also a product of a pattern of avoidance by which he would postpone deciding a complex issue that, with the passage of time, became increasingly difficult to decide.

Judge Holmes's failure to effectively manage his caseload was undoubtedly aggravated by the substantial growth of the Washington County Probate Court's family law docket in recent years. There has been no corresponding increase in the administrative resources available to assist Judge Holmes, who continues to be compensated by Washington County on a part-time basis.[1] Judge Holmes's reliance on his memory to manage his cases under advisement was an archaic approach that may have been effective in earlier, more simple times, but is ineffective today when a heavier docket requires judicial practices tailored to the time-sensitive needs of children and families.

In response to the initiation of the Committee's petition, Judge Holmes adopted a two-fold method for keeping current with matters taken under advisement. First, he has the Register of

---

1. Judge Holmes's starting annual salary in 1989 was $18,000. His current annual salary, twenty-two years later, is $23,826.

Probate maintain a daily log of all filings that require judicial action, and he reviews that log several times per week. Second, he maintains his own log in which he enters every matter under advisement, and, in particular, tracks the status of every matter pending for more than thirty and sixty days. These steps, though simple, have proven effective: As of the hearing, Judge Holmes had no matter that was more than sixty days under advisement and only one that was under advisement for more than thirty days.

Judge Holmes expresses regret for the hardship the delays caused to the parties and other persons involved in the cases at issue. Only after the Committee initiated its investigation did he come to fully consider the particularly negative consequences that the delays had on the children who were the subjects of the guardianship petitions pending before him. I find Judge Holmes's remorse and acceptance of responsibility for the harm caused by his mismanagement of the cases at issue to be sincere.

### III. SANCTIONS

[¶ 5] Having that background in mind and being mindful as well of the overriding need to protect the public, we now consider the parties' positions regarding the appropriate sanction.

█ [¶ 6] Both the Committee and the judge agree that Judge Holmes should be publicly reprimanded for the violations and that a tightly monitored corrective action plan should be put in place. That plan would include bi-monthly reports of all cases under advisement, with the Committee authorized to petition the Court immediately should further problems arise. The parties do not agree as to the final recommendation of the Committee: a one-month suspension of judicial duties, without pay.

[¶ 7] Justice Levy has recommended against the one-month suspension, based in great part on his findings. We conclude that a one-month suspension is not called for in this case. The judge has acknowledged his violations, has created an effective plan for avoiding the problems in the future, has never been sanctioned before, and has honorably served Washington County for twenty-two years. As Justice Levy noted, Judge Holmes's lapses are "at least partially explained by his professional isolation sitting, as he does, in a rural area in which he receives little administrative support and has no immediate judicial colleagues." Given the judge's commitment to improve his processes and ensure prompt and timely resolution to all matters coming before him, a suspension from his duties at this time would redound to the detriment of the public and litigants and would provide no greater protection for the public.

[¶ 8] Judge Holmes has responded honestly and with evident remorse, and has demonstrated an understanding of the serious harm to the litigants, to children and families, and to the public's perception of justice caused by his unacceptable delays. We are confident that the public reprimand and the corrective action plan will serve to change his practices substantially, will protect the public, and will best serve to ensure that the violations will not reoccur.

The entry is:

It is ORDERED that Judge Lyman L. Holmes is adjudged to have violated Canon 3(B)(8) of the Maine Code of Judicial Conduct in failing to dispose of all judicial matters promptly. It is further ORDERED that Judge Holmes is publicly reprimanded for the violations. It is further ORDERED that Judge Holmes continue to provide, every other month through August 31, 2012, the Executive

Director of the Committee on Judicial Responsibility and Disability with a list of cases taken under advisement for more than thirty days. The Committee may seek an extension of the reporting requirement by filing a request with the Court. Judge Holmes shall utilize the form for reporting cases under advisement to the Chief Judge of the Maine District Court. It is finally ORDERED that the Committee shall report immediately to the Court any further problems that arise.